We move to the second case this morning, Greenpoint Tactical v. Pettigrew & Hellers. Mr. Richardson? Good morning. It may please the Court. My name is Michael Richman. I represent the appellants in this action. This is a Fourth Amendment case brought under the Supreme Court's 1971 decision in Bivens v. Six Unknown Agents of the Federal Bureau of Investigation. The plaintiffs in this case seek damages from federal officers who violated the Fourth Amendment prohibition against unreasonable searches and seizures, which is the precise, core, implied right of action that the Supreme Court recognized in Bivens. So, Mr. Richman, let me just focus you right away on what concerns me about this. If you will acknowledge that a search without any warrant whatsoever is different from a search with a bad warrant. And maybe you don't want to go that far, but just humor me. If you think that they're somewhat different, then under Abbasi, you need to look at these various factors. I hate that word, but anyway, factors. And one of the ones that really concerns me is the concept that the judiciary is going to supervise the content of every affidavit supporting every search warrant. And I'm trying to imagine even what discovery would look like. Is the person challenging the warrant going to have access to everything that the U.S. Attorney's Office has? How does your system actually work? Thank you, Judge. We don't go that far. We don't think we need to. We only ask that in the unique circumstances of this case where the contents of the warrant became available to us because they were publicly disclosed in violation of department rules and we were able to then see after a search and seizure which caused damage, after which everything was returned, no indictment was ever brought, the warrant applications were made public and we were able to see that there was false and misleading information that we believe misled the magistrates to find probable cause. I understand that that's your situation, but what I don't understand is if we were to rule for you in case number one, this case, I would foresee somebody coming along in case number two saying the court has established the proposition that false and misleading statements and affidavits for search warrants are actionable. We suspect that that's what happened here, and so please allow us to look into that. So I think, Your Honor, a couple of ways that I would respond to that. First, courts already look at probable cause in warrants under Brady and under Franks, so this is not new. Secondly, we're addressing a situation where a search and seizure led to damage, to actionable damage. No, I accept that. So we don't argue as a proposition that, as a matter of law, anyone should be able to inquire into any search warrant affidavit. We say in the unique circumstances of this case where there was damage and we had good reason to believe, based on the publication of the affidavits, that there was false and misleading information, that we have a right to seek redress under the core principle of Bivens. And to your other point, Your Honor, we do agree, we contend that a search under a warrant that is deficient on its face is the same as a warrantless search under the Fourth Amendment, and I believe that was the Supreme Court's decision in Grove. So... Mr. Richman? Yes. Frankly, I'm inclined to agree with your assessment of the relationship between this case and Bivens, and that Bivens should not be confined to its facts, even if we apply the Abbasi factors as we need to. My concern, however, here is with your... Actually, the substance of your complaint that this affidavit was false or misleading. More specifically, let me ask, first of all, would you agree that the affidavit, as it stands, on its face, was sufficient to authorize the warrant? No, Your Honor. And I think that, and I appreciate the defendants argued that statements that were made were accurate, but may have left things out. But if material things are left out, then I would dispute the accuracy of the application. That is not my question. Let's take it a step at a time. The first question is, if I'm the judge looking at this application, is it sufficient for me to issue a proper warrant with probable cause? Inasmuch as the application contained false and misleading information that the magistrates would not have had a reason to know, I would say yes. I will take that as just a flat yes, okay? I understand that you think it was deceptive and misleading. But then I look at the more specific allegations you've made about what's false or misleading about it, and frankly, they look pretty trivial when I compare it to the enormous unrealized gains that are described in the affidavit, a subject on which, as near as I can tell, your case is silent. In paragraph 34 of the affidavit, for example, identifies assets that in two months were supposed to have appreciated by 140% in fair market value. And I understand that it's a white-collar case. Defendants have—or targets of the investigation have explanations. But I don't—I'm having trouble seeing any of this as all that material to the decision whether to issue the warrant. I think, Judge, the problem with that is that those statements in the applications were in the context of other statements that suggested that asset values were being falsely inflated and that appraisals were being manipulated. So if you didn't have those other facts, which are the facts that we contend are false and misleading, the mere fact in and of itself that gem and mineral—fine gem and mineral assets may have increased by a substantial amount over a short period of time would not have seemed that remarkable and we contend would not have been in and of itself probable cause for a search warrant to seize the gem and mineral assets. The context of the application was to create a story that the gems and minerals were being artificially inflated so that the managers of the fund could line their own pockets. You have the extraordinary increases in claimed value. And you're standing behind those values, right? That's correct, Your Honor. You said those values were legit. And still do. Okay. Okay, both—including the 140 percent increases on average in two months. In relation to the particular assets involved, yes. Okay. And—well, okay, we also have a situation in which your clients stood to gain enormously from claims of unrealized gains, correct? Yes, Your Honor, but that was in accordance with the operating agreement of the fund as disclosed to investors, another fact that was left out of the application to the magistrates. We believe that insofar as the constitutional principles are concerned, there may be but one small difference between this case and Bivens, because instead of suing the federal officers who executed the search, the plaintiffs sued the federal officers who procured the search warrants based on false and misleading information in order to persuade magistrates to issue them based upon probable cause. But you are arguing that moving from agents to a prosecutor is an immaterial move. In this case, Your Honor, because the prosecutor, based on the complaint, was acting in this case in an investigative capacity. I mean, we've had a lot of cases about how that line gets drawn, but usually when you see a prosecutor acting in an investigative capacity, the prosecutor is working with the field agents, saying look for this, don't look for that, trying to provide some guidance. Whereas here, you're talking about a lawyer for the government who's going to a magistrate judge, seems like a judicial act, to get a search warrant. So why is that investigative? It's investigative because the complaint alleges that the prosecutor was inextricably bound with the work of the FBI investigator in preparing the applications that contain the false and misleading information, presenting them for the affidavit. It's not prosecutorial in the sense of no one seeking an indictment. There are no grand jury proceedings. It's the simple presentation of the application for a warrant where the work of the prosecutor appears to be indistinguishable from the work of the FBI investigator. But, you know, that happens all the time, and so I wonder, in other words, somebody shows up before either a state judge or a magistrate judge to get a warrant. Are there other cases that have classified this as investigative as opposed to something within the scope of absolute prosecutorial immunity? I believe the immunity cases do, Your Honor. So not dealing with our precise Bivens claims, but when you get into the area of qualified versus absolute immunity, I believe that line is drawn. Go ahead. I didn't see any response in your reply brief to the government's reliance on, I think, the Burns case or the Vandekamp cases. Your Honor, we... On the question of absolute immunity. Yeah, I thought we did respond to that, and I apologize if we didn't, but our position is that the prosecutor is not entitled to absolute immunity in this case because the complaint alleges that his activities were intertwined with the investigator and that it was an investigative fact-finding part of the role of the prosecutor rather than the prosecutorial advocacy role of the prosecutor. The prosecutor wasn't yet in a position to be an advocate. So getting back to... I'm not sure whether this is an either-or, but let's just say, if we get past the idea that this is just Bivens 2 and we should just follow Bivens and say you have a remedy, I assume at that point there would need to be some kind of remand to see whether absolute or qualified immunity ought to attach to anything. I think that's right, Your Honor. The court below did not reach the immunity questions because she decided that there was no implied right of action under Bivens. Right, so that would be a possibility. Okay, and if we think it's Bivens 2, you don't think we should even touch the Abbasi factors? No, I think the court should. I think the court should decide both issues. While I feel strongly that this is not a new context, which is terminology that the Supreme Court has used since Bivens, not just from Ziegler against Abbasi, I think the court should decide that even if it's a new context, because who knows how one is going to measure the distinction. We think it's a distinction without a difference, but someone may disagree. I think that if you reach the Abbasi analysis, the roadmap that the Supreme Court laid out, that you reach the same conclusion that the implied right of action should be allowed in this type of case. It is so close to Bivens, and a greater concern is that if we don't allow an implied right of action in a situation like this, we send the message that prosecutors or investigators may with impunity put false and misleading information in affidavits in order to circumvent the Bivens requirement itself. And so we can't have a warrantless search, we know that. That's the settled law that the Supreme Court has repeatedly reiterated. But if we permit, if we don't allow redress and deterrence for conduct that leads to warrants that don't have probable cause because of false and misleading information, then we have basically eviscerated the core principle of Bivens. Of course, this Court has said previously in Bank that if military personnel torture United States citizens, there is no civil remedy under Bivens. Your Honor, in that case, if I'm remembering correctly, the Court felt that that was for Congress to determine. And if I have the case right. Vance against Rumsfeld, yes. Your Honor, I lost track of... If you'd like, I think you're ready for your rebuttal time. Okay, you're ready to rebuttal. You've got a minute and 31 seconds. Okay, thank you, Your Honor. I'll reserve the rest for rebuttal. Mr. Stewart. Good morning, Your Honors. May it please the Court. I'm Assistant United States Attorney Carter Stewart, appearing on behalf of Appellees AUSA Darren Halverson and FBI Special Agent Alan Pettigrew. Appellants ask this Court to recognize a cause of action under the Fourth Amendment against both an Assistant United States Attorney and an FBI Special Agent for alleged omissions or mischaracterizations contained in a warrant affidavit. So don't we have to assume at this posture that there were, in fact, highly misleading omissions and misstatements in that affidavit? Yes, Your Honor. I think for the purposes of the 12B6 motion, we assume that the six identified pieces of omitted information were omitted. Right. And so then, what worries me, reading the government's brief, is the absolute lack of any redress if we were to say, no, this is enough beyond the scope of Bivens and it doesn't meet the Abbasi factors and, therefore, if we think of it as an extension, I'm not sure we should, but let's suppose. There clearly is no remedy here. There's not Federal Tort Claims Act. You can't sue under state law for what an AUSA or an FBI agent have done. And so you're in the rather unattractive position of saying that lies go unredressed. So to respond to that point as best as I can, Your Honor, I think the Supreme Court's jurisprudence since Bivens has been essentially that tale, that originally the Supreme Court obviously recognized three causes of action under the Constitution against federal actors and has since that time dialed back that standard and has said that separation of powers dictates that any cause of action must rest on a statute. But they keep reaffirming Bivens at the same time. They keep going out of their way, actually, to say, even though we're not going to extend it to this setting or that setting, Bivens is good law. That's correct, although in the two most recent Bivens cases, they've, in some sense, rhetorically at least, retreated even from that position. In Abbasi, they said it was possible that if Bivens were decided today, the outcome would be different. And then in Hernandez, just two weeks later... That's not just dicta. That's just sort of muse, muse, muse. It's not necessary at all to the holding of Abbasi. That's correct. But the language of Abbasi and then Hernandez, which clarified it just two weeks later, does indicate that the Supreme Court sees the foundations of Abbasi as inconsistent with its current understanding of the existence of federal common law and the emphasis on separation of powers that comes from both Abbasi... And at the price of encouraging lies and misleading in affidavits, because actually I'll pose you the same kind of question I was asking Mr. Richman. This particular case, through whatever series of events happened, was pretty easy in that the contents of the affidavit became public, the Milwaukee Journal Sentinel publishes its article, et cetera. But even today's cases that we're looking at show that, unfortunately, overstating or misleading or out-and-out lies in affidavits are not unheard of. And so other people are going to come along too, saying, is this a rule-of-law society? Do we actually have any confidence in our judicial system when somebody can just write down whatever they feel like in an affidavit? The magistrate judge or the state judge has no idea how to test the legitimacy of what's said. I mean, that's really underlying it all, why the Supreme Court in Bivens itself said in the abusive circumstances of that case that there was a private right of action. Yes, Your Honor. I think the primary response to that is that there's no incentive in favor of that conduct. Although we don't contend that the Franks' right should be extended into the civil context, it still exists in a criminal context. So if the affidavit will result in evidence that led to an indictment, then certainly at that point the appellants here would have the opportunity to challenge the warrant and suppress. But your system is the most innocent people have the least number of remedies. If you actually get indicted, that means there was probable cause or somebody thought there was probable cause, whereas if it's a case that just utterly falls apart, as seems to be this one, then you're just out of luck. I think the system is that the individuals whose rights are most under threat receive protection. The individuals such as the plaintiffs here... That is utterly wrong. I have to say, to follow up on Judge Wood's question, this notion, I would have thought that the Fourth Amendment exists, if anything, to protect the rights of people who are innocent from overly aggressive government investigators. And in applying the Abbasi factors, as we're supposed to here, I would think that the existence of the Franks remedy makes this the tiniest of incremental steps in allowing a civil remedy where there would also be, in other circumstances, a remedy under criminal law. You really are in this very unpleasant and uncomfortable position of saying that folks who have done nothing wrong and have been the victims of government overreach have no rights, but people who have, to be correct about it, at least for whom there is probable cause for an indictment, those folks manage to get a remedy. That just seems perverse to me, frankly. I understand your concern, Your Honor. But as the Supreme Court has explained in Abbasi and Hernandez, extending a private right of action is primarily a legislative activity, and that is the system Congress has created. Through the FTCA and the wrongful imprisonment statutes, it is true that individuals who are the victims of malicious prosecution or other kinds of misconduct do have the right to seek redress from the government. Are you aware of the evidence, and I'm thinking here, for example, of a number of civil remedies that have been set up in the wake of the 9-11 attacks? We've got the Torture Victim Protection Act and other provisions where Congress has legislated on the assumption that folks in the United States have a viable remedy under Bivens for similar kinds of government misconduct. And in fact, the State Department over the years has trumpeted Bivens to show how well-protected human rights are in the United States, to tell folks around the world we provide remedies against our government. And yet the Justice Department has been steadfastly arguing the other way to shrink Bivens coverage as much as possible. Again, Your Honor, I would contend that it's the United States Supreme Court that has undermined the foundations of Bivens by saying that it is not the place of the judiciary to create a private right of action against government agents. Certainly there is a cost, as the Supreme Court has observed, to allowing individuals to bring a private right of action. For example, comparing this to Franks, I think, is inapt because Franks is limited to a far smaller number of potential claimants or litigants than the private right of action here would be. Any individual. How is that? How often? Yeah, I don't understand that. Do you have any empirical basis for that? What I mean is that under the proposed Greenpoint remedy, any individual who has a warrant served on them, who disagrees with the premise of that warrant, would have the ability then to bring a Bivens-type action. But then you'd have to go through something much like what happens in a Franks hearing. Everybody who asks for a Franks hearing doesn't get one. I mean, the judge will evaluate whether there is enough there to justify that. And Franks hearings, in my rough experience, are requested a great deal more often than they're given. I certainly can say that with my experience. I mean, and candidly, it's not entirely clear from what plaintiffs propose if the same procedure would be followed here. There doesn't seem to be the same escape valve that you're describing, Judge. Their position appears to be that the complaint, as would be evaluated under a standard 12B6 remedy, would be sufficient to get a government litigation. It would be a fairly straightforward motion to dismiss, arguing in essence 9B should apply, and that such fraud has to be alleged with particularity, and this doesn't do it. Correct. But depending on the way they structure the allegations, they may yet be able to survive that motion. And as Judge Wood has pointed out in her questioning earlier, and then several other circuit courts have pointed out, discovery in that instance will require delving into the files at the U.S. Attorney's Office. You would have to potentially question both the officer and the AUSA about what particular facts they knew about and whether or not those were material. Yeah, and we're going to hear another case today that involves precisely such sorts of discovery against state defense, and it's not unusual to have that kind of – if you've got a viable Franks argument, then that's what you have to do. You have to evaluate the state of mind of at least the agent. I frankly agree with you on your arguments about the AUSA in this case being entitled to absolute immunity, but in Franks hearings, you get to dive pretty deeply into what the agent knew and when he knew it. Yes, Your Honor, but again, both 1983 and Franks are distinguishable. A 1983 action does not raise the separation of powers concerns that animated the Supreme Court's decisions in Hernandez and Abbasi because 1983 obviously was a congressional enactment. But otherwise, it's identical. Otherwise, within the prosecutor's office, all of the things that you're worried about would happen in a 1983 action. It's just that you do have a statute that says that the private right of action exists. Yes, Your Honor, and that's typical, obviously, for Bivens versus 1983 actions. Otherwise, we get Bivens actions all the time from the Bureau of Prison, from other sorts of places, and sometimes there's merit to them. Yes, Your Honor. Turning now, unless the court has other questions on the Bivens point to qualified and absolute immunity, briefly, I think that as appellants concede in their remarks, on its face, the warrant provides probable cause. As we detailed in our brief, there was ample evidence of possible financial irregularities at appellants' businesses. The SEC conducted an audit which led to the referral to the FBI. The FBI identified $43 million of unrealized gains versus $310,000 of realized gains. And this was taken, was it not? I'm trying to remember. You can clarify for me. They were taking their payments from the assets of the funds, right? That is correct, Your Honor. So the plaintiffs, it is true it was disclosed in the fund documents, but what the fund documents, I mean, they said several things, but one thing they said was that they would receive both a management fee, I think on an annual basis, and the quarterly payments, based on the total fund valuation, which would be based on both realized and unrealized gains. And since the realized gains were only, do I remember, like $303,000? It was a small number. $310,000, Your Honor. Yes, $310,000. And so the unrealized gains were by far the greater proportion. Yes, Your Honor, $43 million. So they were calculating the asset value based on essentially that $43 million and then transferring payments for themselves. Again, we're not disputing this with the offering documents permitted, but because they had only acquired about $300,000 in actual sales money, the vast majority of the money transferred then directly to plaintiffs would have come from money provided to them by investors. Was the government about to prove this was a Ponzi scheme? I mean, what were you thinking? Candidly, Your Honor, I don't know. I was not privy to the criminal investigation aspect. I've read the warrant application and the complaint in this case. But certainly it appears that that would be the concern, something like some sort of investor fraud was the concern that animated the FBI in seeking the warrant because they saw the massive amount of money that would be transferred essentially directly from investors to the plaintiffs under the guise essentially of paper appraisals. It all depends on the appraisals, right. Is it correct, Mr. Stewart, that the SEC's civil enforcement action is proceeding? I forgot whether it's I think in the Eastern District. It is in the Western District of Wisconsin, Your Honor. So I'm not personally handling it. There's a settlement conference scheduled for December 10th. So as far as I know, the case is still proceeding. I believe there's been some motions practiced and the appellants have now declared bankruptcy. I believe that may have caused some issues with the civil proceeding. But, yes, the SEC is moving forward in the civil enforcement action. And then – Mr. Stewart, I can't help but ask you about the assertion, I think it's at page 26 of your brief, where Congress creates a coherent scheme to address a certain category of constitutional harm, Bivens is generally unavailable to fill any remaining gaps. I agree with that in the abstract. My question is where's the coherent scheme here at the risk of being argumentative about it? Your Honor, I think it's precisely the statutes outlined in our brief, which would be the FTCA and the wrongful imprisonment statute. None of which applies. I mean, why is that a scheme here? I mean, we could say there's an environmental law too, but it doesn't apply here. Well, as the Supreme Court observed in Avasi, the fact that Congress has clearly considered legislating in an area and chosen not to is itself evidence that – Do you really think that? I know you're wondering. I mean, you're watching Congress. I don't know. I believe that that is what the Supreme Court said. The Supreme Court usually tells us not to draw inferences from the absence of legislation. They do indeed. That's right. Because there are so many reasons why things don't get through Congress. Well, in this case, the relevant statutes – it's not as though Congress has ignored the possibility of an individual seeking compensation for misconduct-related law enforcement activity. They have simply not extended it to individuals situated, like the appellants, who were never indicted. And who – By way of comparison, Congress has enacted legislation that allows non-U.S. persons, non-citizens, people without permanent status in the United States, to pursue civil remedies against government officials for torture. Congress has not expressly provided such relief, and by statute, for American citizens. And one way to assume that – one way to read that is that Congress wants remedies for aliens but not for U.S. citizens. The other is to read it – that Congress is assuming Bivens is available much more broadly than the Supreme Court has been treating it in most recent years. And respectfully, Judge Hamilton, I think the Supreme Court's instruction would be to read it as though Congress has made the decision to create – for any number of reasons – to create remedies for aliens but not for citizens. It's certainly possible, Your Honor, that remedies brought by aliens would be far less frequent than those brought by U.S. citizens. Obviously, U.S. citizens interact with their government far more frequently. So it may simply be that Congress has determined that the burden on the government is much greater in the context of a domestic remedy than it would be in a foreign remedy. It's not entirely clear, but certainly Congress has legislated on topics related to this, but not – Interesting theory. With my colleague's indulgence, I just wanted to ask you to address one case that came up for the first time in plaintiff's reply brief, at least in this court, which was Groh against Ramirez, where the court did not seem to have a problem with Diven's relief in this kind of context of an invalid search warrant. Yes, Your Honor. I think Groh is distinguishable largely because, unlike the claim that plaintiffs propose here, there would be no need to delve into intent or subjective information available to either the prosecutor or the agent in Groh. In Groh, the ruling was restricted strictly to the text of the affidavit itself. The Supreme Court noted, I believe that the blank on the warrant in Groh described – there's a box, I guess, that describes the materials to be seized, and it says something like one blue house. As the Supreme Court said, it was totally deficient, and any reasonable officer looking at the warrant would have understood that this was essentially no warrant at all. So there wasn't the same need to conduct discovery into it. Some defects in warrants would be actionable and others would not, depending on the extent of discovery and investigation needed to prove the claim. Well, I think, Your Honor, the cause of action at issue in Groh, because of the way it's structured, is fundamentally different from a burden-to-the-government perspective. There is no need for the kinds of discovery that we discussed earlier in terms of what would have been in the U.S. attorney's file. In a case like Groh, a court or a judge can simply look at the warrant and determine that it's on its face, invalid, and thus proceed through the litigation appropriately. The sorts of discovery they would presumably be proposing in this case are not necessary to get out of the gates in a Groh action as they would be in a Greenpoint action. Thank you, Mr. Stewart. Thank you, Your Honor. Mr. Richman? Thank you, Your Honor. I want to first respond briefly to the last point and disagree respectfully with counsel. The constitutional principle in Groh is that a warrant that is on its face, deficient, under the Fourth Amendment can be actionable under Bivens. And the Fourth Amendment says, no warrant shall issue but upon probable cause. So it's fine to say, in particular circumstances of Groh, the issue was no specification of the place of the persons to be seized, but there should be no constitutional difference in a warrant that is not issued on probable cause. It's the same underlying constitutional principle. I think that the court has a... colloquy indicates what I would argue, which is that there is no remedy for plaintiffs in this case, no means to deter officers from any further conduct in this case. The briefs have made clear, and I think the court understands that none of the existing statutory schemes provide for this, and Congress has had a chance to go either way on this. Bivens has been settled law for so long. And that has remained the case, even though Congress could have gone the other way. And so I submit that it is so close to Bivens, I don't know that there could be a closer case. If the Bivens right isn't able to be extended in this case, then, as I said earlier, we eviscerate the Bivens principle. And I don't believe that that's what the Supreme Court intended in Ziggler against Abbasi. The roadmap still leaves room to find a pathway for an implied right of action for a violation of the Fourth Amendment for an unconstitutional search and seizure. Thank you, Your Honor. Thank you, Counsel. Thanks to both counsel, and the case will be taken under advisement.